Bradford vs. The Underwood Lumber Co.

BRADFORD, Appellant, vs. THE UNDERWOOD LUMBER COMPANY, imp., Respondent.

*May 7 — June 3, 1891.*

*Logs and lumber: Liens: "Supplies:" Board: Services in cooking: Apportionment of contract.*

1. The word "supplies" in sec. 17, ch. 413, Laws of 1889 (providing that no lien upon logs for supplies shall be had, except in certain counties), includes board furnished to men employed in getting out or running the logs.

2. Sec. 14, ch. 413, Laws of 1889 (giving a lien upon logs for services in cooking food for the men working upon the logs), does not give a lien for board furnished to such men, including the raw materials used in preparing the food; and one who has contracted to furnish such board at a stipulated price cannot have the contract apportioned so as to have a lien for his labor in cooking.

APPEAL from the Circuit Court for *Oneida* County.

Action to enforce a lien upon logs. The facts are sufficiently stated in the opinion. There was a verdict in favor of the plaintiff, assessing his damages at $89, and finding that he was entitled to a lien upon the logs for that sum. From the judgment entered on such verdict the defendant company appealed.

The cause was submitted for the appellant on the brief of *Miller & McCormick*, and for the respondent on that of *Levi J. Billings*.

COLE, C. J. The plaintiff entered into a contract with the defendants McPhee and Mitchell to furnish board for men who were employed by them in running logs upon the Wisconsin river. The price of board was one dollar a day for each boarder. McPhee and Mitchell did not own the logs, but were running them for the owner, the defendant the *Underwood Lumber Company*. The plaintiff seeks to enforce a lien for the board furnished by him against the

logs which the men were engaged in running while board-
ing with him.    The sole question presented is, Does the law
give a lien for such a claim?

The plaintiff lived in Oneida county, and the board was
furnished in that county.    Whether the plaintiff is entitled
to a lien upon the logs which his boarders were engaged in
running depends upon the construction of ch. 413, Laws of
1889, which was in force when the board was furnished.
By sec. 17 of ch. 413 it is provided that no lien for supplies
shall be had under the act except in the two counties
named, which does not include the county of Oneida.    The
subsequent section repeals certain provisions of the Revised
Statutes, and also certain session laws in conflict with the
provisions of the act.

This court, in construing the word "supplies," as used
in sec. 1, ch. 167, Laws of 1879, held that it included board
furnished men who were engaged in getting out, driving,
or rafting logs and timber.    *Kollock v. Parcher*, 52 Wis.
393.    Now, it is very evident that, if we give the word
"supplies," as used in the act of 1889, the same construction
we did in the act of 1879, we must hold that it includes
board or food for men, for which the act of 1889 says no
lien shall be given; and we certainly perceive no reason
for attaching to it a different meaning or signification.
Presumably the legislature, when it enacted the law of 1889,
knew the sense which this court had given the word in the
act of 1879, and intended in the later statute to take away
the right of a lien for board.    This conclusion is irresistible,
when the history of the legislation upon the subject is con-
sidered.    So we must hold that the word "supplies," as used
in sec. 17 of the law of 1889, includes board furnished the
men employed in running the logs, for which no lien is
given.

But the learned counsel for the plaintiff relies upon sec. 14
of the act as giving the right to a lien for board.    That sec-

Bradford vs. The Underwood Lumber Co.

tion, in effect, provides that any and all persons doing or performing any labor or services by cooking food for the men who are performing any labor upon logs shall be deemed to have performed work, and shall have the right to a lien therefor, the same as the men for whom the food is furnished. That is, as we understand the section, so far as the right to a lien is concerned, it placed a cook upon precisely the same footing as the other employees performing work upon logs or timber. That is to say, any person who cooks food for men employed in doing any labor upon logs or timber shall have the same right to a lien for his services as such men have for whom the food is cooked. It, in effect, enacts the rule laid down by this court in *Winslow v. Urquhart*, 39 Wis. 260, where it was held that one who cooked food for men engaged in cutting and driving logs and timber was entitled to a lien under the statute for his services. But the section must be restricted to the services of the cook, and cannot be extended so as to embrace a claim for board, which includes the raw materials used in preparing the food. The lien is only given to one who cooks the food for those employed to do work upon the timber, where the provisions are furnished by the employer. This construction seems necessary and essential in order to render the different provisions of the law harmonious and consistent, and to effectuate the obvious intent of the legislature to take away all right of a lien for supplies.

It is contended that the word "supplies," as used in sec. 17, should have a restricted meaning, and be applied only to merchants and dealers in such goods who sell them to persons engaged in getting out logs, wholly apart from any labor to be performed on such logs. We are unable to give the language this construction. It is quite evident to our minds that the legislature intended to deny all liens for supplies, and it is unreasonable to assume that the word was not used in the law of 1889 with reference to the defi-

nition this court had given it in lien cases. This court had distinctly held that the word "supplies" included the board of men, even when furnished at an hotel in a city several miles from the place where such men were and worked upon logs; and we must presume the legislature was familiar with these decisions, and used the word in the same sense, and that it prohibited a lien for the plaintiff's claim.

It is further said that the plaintiff, under this construction, is entitled to a lien for his labor in preparing or cooking the food for the men who were running the logs; but that is not the theory of the action. The action is based upon a contract for furnishing board for men while driving logs, at a stipulated price. The contract is entire, to furnish a certain thing for a specified compensation, and we do not well see how there can be an apportionment separating the value of the materials used in the food from the labor in preparing it. To so apportion the contract would be really making a contract for the parties, which the court has no right to do. It well may be, had McPhee and Mitchell employed the plaintiff to cook or prepare food for their men, he would be entitled to a lien for his labor under the statute. But, as we have said, that is not the theory of this suit, which is to recover the value of the board specifically and nothing else.

We therefore think the trial court erred in not giving the instruction asked, that the plaintiff was not entitled, upon the facts proven, to a lien upon the logs in question for the balance due on his claim for board; and the judgment giving such a lien is wrong.

*By the Court.*— The judgment of the trial court is reversed, and the cause is remanded with directions to modify the judgment in accordance with this opinion. It does not seem necessary to order a new trial, as the amount due the plaintiff from McPhee and Mitchell is not contested.